JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Steven Rhodes, appeals his conviction for tampering with records. For the reasons set forth below, we affirm.
 {¶ 2} On November 15, 2006, the Cuyahoga County Grand Jury indicted appellant on two counts: count one alleged tampering with records, in violation of R.C. 2913.42; count two alleged theft, in violation of R.C. 2913.02. Appellant pled not guilty to the charges in the indictment.
 {¶ 3} After appellant waived his right to a jury, the case proceeded to a bench trial on August 23, 2007. At trial, the evidence established that appellant applied for and was approved for assistance in June of 2004 under the Cuyahoga Metropolitan Housing Authority ("CMHA") Housing Choice Voucher Program ("Voucher Program"), formerly known as the Section 8 Program.
 {¶ 4} Under the program, a portion of appellant's rent, about $248 per month, for an apartment he leased on Pearl Road in Cleveland, Ohio ("Pearl Road apartment"), was paid by CMHA because his income, reported as social security disability benefits in the amount of $831 per month, fell below a certain level. In order to receive assistance under the Voucher Program, appellant was required to execute various forms.
 {¶ 5} When applying for the Voucher Program, on August 26, 2003, appellant signed and executed the "Applicant/Tenant Certification." This form certifies that appellant will report honestly and truthfully various information such as his household composition, income, and any other assets. This statement remained in effect for the life of appellant's *Page 4 
participation in the Voucher Program.
 {¶ 6} On August 26, 2003, appellant also executed the "Tenant Fraud Letter." This form states, in relevant part:
 {¶ 7} "Whenever appropriate, we will ask for information about your income and your family size so we can make sure that you are paying the correct rent to your landlord and that your house or apartment is the right size for your family. When we ask for this information, be sure to:
 {¶ 8} "1. Let us know about income received by members of your household and income that you expect to receive in the next year. * * *
 {¶ 9} "2. Let us know the name of everyone expected to live in your household in the next year.
 {¶ 10} "* * * It is very important you report all income and any changes in the number of people living with you. We urge you to be sure that you are meeting these responsibilities so that you can continue to receive assistance * * *."
 {¶ 11} The form also provided that failure to follow these rules would result "in referral of the matter for investigation and your being accused of a Federal crime."
 {¶ 12} Additionally, in order to receive assistance, CMHA required that appellant complete a form listing household members, sources of income, assets, and expenses. In this form, executed by appellant on August 26, 2003, appellant did not list anyone as a household member, listed his social security benefits as his only assets, and maintained that he did not *Page 5 
own any real estate.
 {¶ 13} On February 8, 2005, in order to recertify under the Voucher Program, appellant was required to complete the "Participation Recertification Assessment" form. In this form, appellant stated that no one had moved into or out of the apartment in the last 12 months and that he did not expect anyone to move into or move out of the apartment in the following 12 months. Also, appellant indicated that he only received social security benefits and no other form of income. He further indicated that he was not self-employed and did not own other real estate or property.
 {¶ 14} Rita Patterson, an eligibility specialist with CMHA, testified that she conducted the interview with appellant and personally went through the application with him on February 8, 2005.
 {¶ 15} Agent David Fredrick of the United States Department of Housing and Urban Development testified that his investigation of appellant and his living arrangement indicated that appellant did not provide accurate information in the Voucher Program forms. First, Fredrick testified that as a result of his investigation, he concluded that Joe Maistros lived with appellant at the Pearl Road apartment in Cleveland, Ohio without the knowledge of CMHA.
 {¶ 16} Fredrick testified that his investigation of Maistros revealed that, in his application for an identification card, dated December 6, 2004, Maistros listed his place of residence as the Pearl Road apartment. Additionally, Fredrick spoke with the landlord, *Page 6 
Robert Cortelezzi, regarding Maistros' presence at the apartment.
 {¶ 17} Cortelezzi, owner of the Pearl Road apartment during June of 2004 to June of 2006, testified that Maistros lived on the property with appellant and that he personally saw Maistros on a regular basis. Cortelezzi saw appellant, on the other hand, only when he would pay the rent.
 {¶ 18} Anthony Perkins, a housing inspector with CMHA, testified that when he visited the Pearl Road apartment, Joe Maistros answered the door. An inside inspection of the apartment revealed that appellant was not present.
 {¶ 19} Roberta Witt, administrative manager of the Voucher Program, testified that it is only permissible to have someone else live on a CMHA premises when the person has been reported to the housing authority, their income has been included, and the person has passed a criminal background check. She explained that such information bears heavily on the amount of assistance awarded to the tenant or whether assistance is provided at all. Witt testified that appellant, however, never listed anyone else as living on the premises.
 {¶ 20} Agent Fredrick further testified that appellant listed his place of residence on his driver's license application and various social security documents as being on Eagle Road in Willoughby Hills, Ohio. Fredrick investigated this residence and discovered that the land was being used for farming. Appellant had completed forms in his own name requesting tax exemption status for the farm land. Fredrick's investigation revealed that the owner of the property at relevant times was Harriet Rhodes, appellant's mother. Financial records *Page 7 
indicated that the proceeds from the egg, poultry, and tree cutting farm were paid to the Rhodes' family trust after appellant's mother passed away.
 {¶ 21} In addition to the foregoing, Wilma Freed, who ran an apartment building in Cleveland, Ohio, testified that on September 24, 2005, appellant identified himself as the owner of a poultry farm. More specifically, appellant maintained that Merle Rambo worked for him at appellant's poultry farm on Eagle Road in Willoughby Hills, Ohio and supplied a verification of employment for Rambo when Rambo applied for an apartment in Freed's building. Freed further testified that sometimes appellant would pay the rent for Rambo and pick up groceries for him as well.
 {¶ 22} As a result of Agent Fredrick's investigation, CMHA terminated appellant's housing assistance payments on June 30, 2006.
 {¶ 23} At the close of the state's case, appellant moved for acquittal pursuant to Crim. R. 29(A). The trial court denied his motion. Thereafter, appellant testified on his own behalf.
 {¶ 24} Appellant denied being employed from June of 2004 to June of 2006 and maintained that he only received income from social security. Appellant further denied living at the Eagle Road residence and maintained that he has resided at the Pearl Road apartment since 1992. He explained that the Willoughby address was listed on his driver's license merely because he had failed to change it.
 {¶ 25} He testified that, during all relevant times, his mother owned the property at *Page 8 
Eagle Road until she passed away in 2006. Thereafter, a trust was established for the property in which his sister was the sole trustee. Appellant admitted to receiving disbursements from the trust, but maintained that the money was only used to maintain the property.
 {¶ 26} Appellant also admitted to permitting Maistros to stay at his apartment on various evenings. He explained, however, that he did not list Maistros as a household member on the Voucher Program forms because Maistros would not give him his social security number, and he did not want to get into a physical confrontation with Maistros.
 {¶ 27} Finally, appellant testified that when he signed the rental application for Rambo, he was not working for appellant. He maintained that he lied on Rambo's rental application.
 {¶ 28} Appellant then renewed his motion for acquittal. The trial court again denied his request.
 {¶ 29} On August 28, 2007, the court found appellant guilty of tampering with records, as charged in count one of the indictment, but not guilty of theft, as charged in count two. On October 5, 2007, the court sentenced appellant to two years of community control sanctions.
 {¶ 30} Appellant now appeals his conviction and asserts one assignment of error for our review. Appellant's sole assignment of error states:
 {¶ 31} "The Defendant's conviction was based upon insufficient evidence, in *Page 9 
contravention to the 14th Amendment to the United States Constitution, and to Article I, Section 16 of the Ohio Constitution."
 {¶ 32} Within this assignment of error, appellant argues that his conviction was based upon insufficient evidence because the state failed to present evidence that appellant gained a benefit, or any other party suffered a detriment, as a result of any statements made by appellant. We find appellant's argument without merit.
 {¶ 33} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 34} In the case sub judice, the trial court convicted appellant of tampering with evidence, defined in R.C. 2913.42 as the following:
 {¶ 35} "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 36} "(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, *Page 10 
computer software, data, or record;
 {¶ 37} "(2) Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."
 {¶ 38} R.C. 2913.01(B) defines "to defraud" as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another."
 {¶ 39} In the instant matter, we find that the state presented sufficient evidence establishing that appellant falsified documents by denying the presence of Joe Maistros in the Pearl Road apartment. Appellant executed the "Appellant/Tenant Certification" and the "Tenant Fraud Letter" in which he agreed to report honestly and truthfully information such as household composition. Additionally, appellant executed the "Participation Recertification Assessment" on February 8, 2005, in which he denied having anyone live with him or move out of the Pearl Road residence in the preceding or following 12 months.
 {¶ 40} The state presented evidence, however, establishing that Joe Maistros was residing with appellant during the time that appellant was receiving assistance under the Voucher Program, from June of 2004 to June of 2006. The state presented an application for an identification card completed by Maistros on December 6, 2004, listing the Pearl Road apartment as his residence. Additionally, the state presented the testimony of Robert Cortelezzi, the owner of the apartment, that Maistros lived on the property with appellant and that Cortelezzi personally saw Maistros on a regular basis and attended to Maistros' *Page 11 
complaints regarding the apartment. He further provided that he rarely saw appellant on the premises. Anthony Perkins testified that, when he visited the apartment for an inspection, Maistros opened the door and that appellant was not present. Finally, appellant admitted that Maistros stayed at his apartment and merely explained that he did not list Maistros as a household member on the forms because Maistros would not give him his social security number and appellant wanted to avoid a physical confrontation with Maistros.
 {¶ 41} Furthermore, Roberta Witt, administrative manager of the Voucher Program, testified that it is important that a tenant under the program be accurate in reporting additional tenants. She explained that all tenants of the residence must agree to comport to the rules and regulations of the Voucher Program as well as pass a background check. Additionally, CMHA must consider the additional tenant's income in calculating the amount of the benefits appellant would receive under the Voucher Program or whether appellant would be entitled to benefits under the Program at all.
 {¶ 42} In light of the testimony of Ms. Witt, we conclude that appellant gained a benefit by receiving CMHA assistance. Appellant's fraudulent acts afforded him the benefit of having Joe Maistros live with him at the Pearl Road apartment while still receiving benefits as if he were living alone. Furthermore, by falsely representing information to CMHA, appellant deprived other needy, qualified, and honest individuals of the benefits of the program. Considering the foregoing evidence in a light most favorable to the state, we find sufficient evidence establishing appellant tampered with evidence pursuant to *Page 12 
R.C. 2913.42. Appellant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MELODY J. STEWART, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR *Page 1